United States District Court
Southern District of Texas
**ENTERED**
June 08, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| EARL ROBERTSON §<br>§<br>Plaintiff. §<br>§<br>VS. §<br>§<br>FIESTA RESTAURANT GROUP, INC. §<br>§<br>§<br>Defendant. § | CIVIL ACTION NO. 3:17–CV–00384 |

## MEMORANDUM AND RECOMMENDATION

United States District Court Judge George C. Hanks, Jr. has referred Defendant's Motion to Dismiss and Compel Arbitration ("Motion to Dismiss") (Dkt. 20) to this Court for a report and recommendation. (Dkt. 22). After reviewing the briefing submitted by both parties on the Motion to Dismiss as well as the applicable law, the Court recommends that the Motion to Dismiss be GRANTED, and directs Plaintiff Earl Robertson ("Robertson") and Defendant Fiesta Restaurant Group, Inc. d/b/a Pollo Tropical, Pollo Operations, Inc. and POLC-Pollo Operations, Inc. ("Pollo Tropical") to resolve the claims asserted in this lawsuit through binding arbitration.

### I.  BACKGROUND

Robertson filed this lawsuit against his former employer, Pollo Tropical, alleging unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. Pollo Tropical has requested that the Court dismiss this lawsuit and compel arbitration.

This dispute is different from most cases involving the application of an arbitration clause in that the parties here vigorously dispute the basic facts surrounding Robertson's employment dates and whether Robertson even received the arbitration agreement at issue.

**Pollo-Tropical's Position**: Pollo-Tropical contends that Robertson's employment began in an on-the-job evaluation capacity on October 2, 2014. On that day, Pollo Tropical claims that it provided Robertson four separate documents:

- An employee handbook, which contained a section title "Mandatory Arbitration" describing in detail the company's Mandatory Arbitration Program ("MAP"). This section of the employee handbook contains a broad arbitration clause, indicating, in part, that arbitration is required for "disputes, claims, or controversies relating or referring in any manner, directly or indirectly, to: Title VII of the Civil Rights Act of 1964 and similar state statutes …." (Dkt. 13-1 at 9). The employee handbook further provides that the arbitration is to be administered by JAMS, a nationally recognized independent arbitration association.

- A Handbook Receipt, which Robertson signed acknowledging receipt of the employee handbook and "agree[ing] to abide by its provisions." (Dkt. 13-1 at 14).

- An Employee Acknowledgment of Introductory Period ("Employee Acknowledgment"), which Robertson signed acknowledging receipt of the Handbook Receipt.

- An Agreement for Resolutions of Disputes Pursuant to Binding Arbitration Between Pollo Tropical and Earl Robertson ("Arbitration Agreement"), describing the company's MAP. The Arbitration Agreement's language is quite similar to the employee handbook's "Mandatory Arbitration" section, and describes the scope of the arbitration clause as well as the process by which disputes are to be arbitrated through JAMS.

Pollo Tropical says that in January 2015, after Robertson had completed his introductory period, he was promoted to an assistant manager position. In that capacity,

Robertson received—and signed—a three-page offer letter setting forth the terms of his new job, including his base salary, bonus potential, health insurance, life insurance, disability insurance and vacation policy ("Offer Letter"). The Offer Letter included the following language concerning arbitration:

| Mandatory Arbitration Program (MAP) | All employees agree to participate in our Mandatory Arbitration Program (MAP) as a condition of employment. All employees must sign the MAP agreement before commencement of employment with Pollo Tropical. |
|---|---|

Pollo Tropical terminated Robertson's employment on July 21, 2016. In the wake of this lawsuit, Pollo Tropical demanded that the purported arbitration agreement between the parties be enforced and the case dismissed.

**Robertson's Position:** Robertson has a much different take on his employment relationship with Pollo Tropical. Robertson contends that he met with Pollo Tropical on October 2, 2014, for a job evaluation/interview which consisted of him working a half a day for which he was paid on an hourly basis. Robertson admits that he signed a few documents that day, including the Handbook Receipt and Employee Acknowledgment of Introductory Period, but strongly denies that he received an employee handbook or the Arbitration Agreement at that time. According to Robertson, Pollo Tropical did not hire him full-time in October 2014, but did follow-up with him in early January 2015 and requested that he come in for another job interview.

Robertson says that on January 13, 2015, he spent another half day working as part of a job evaluation/interview and was paid as an hourly worker. A few days later, Robertson maintains that Pollo Tropical offered him a position of assistant manager. At

3

that time, Pollo Tropical handed him the Offer Letter, which he signed. Robertson contends that his employment with Pollo Tropical began on January 26, 2015 and he is adamant that he did not receive the employee handbook or the Arbitration Agreement before he started his employment. Robertson readily acknowledges that the Offer Letter refers to mandatory arbitration as a condition of employment, but argues that because the Offer Letter "stated that employees must sign the MAP, he expected to receive and review it before signing." (Dkt. 23 at 3). Since he did not receive or review the MAP before starting employment, Robertson argues that he cannot be forced to arbitrate the present dispute.

Robertson notes that he was promoted to general manger in May 2015. By his own admission, Robertson received the Arbitration Agreement sometime in 2016, but maintains that he did not sign the document because he did not agree to it. Robertson concurs with Pollo Tropical that he was fired on July 21, 2016.

## II. APPLICABLE LAW

"[A]rbitration is simply a matter of contract …; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (collecting cases). In the Fifth Circuit, courts deciding a motion to compel arbitration engage in a two-step process. The first step of the process requires determining "whether there is a valid agreement to arbitrate between the parties; and … whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252,

4

258 (5th Cir. 1996) (citation omitted). These questions are decided according to state law, here being the law of Texas. *Id.*

Second, if the court determines the parties agreed to arbitrate the dispute, the court asks "'whether legal constraints external to the parties' agreement foreclosed the arbitration' of the dispute." *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 (5th Cir. 2003) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

"When conducting this two-pronged analysis, courts must not consider the merits of the underlying action." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) (citing *Snap-On Tools Corp. v. Mason*, 18 F.3d 1261, 1267 (5th Cir. 1994)). Also, although there is a strong federal policy favoring arbitration, this policy does not apply to the court's initial determination as to whether there is a valid agreement to arbitrate. *See Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). With these general arbitration principles in mind, the Court turns to analyze the legal issues at stake.

### III. EVIDENTIARY OBJECTIONS

Before determining whether there is a valid and enforceable arbitration agreement, the Court must tackle the evidentiary objections raised by Robertson. Robertson objects to the Declaration of Sally Throckmorton ("Throckmorton Declaration")—and its attachments—on the grounds that the declaration does not satisfy FED R. EVID. 803(6). FED. R. EVID. 803(6) creates a business record exception to the hearsay rule such that a record is admissible if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Robertson argues that the Throckmorton Declaration is improper because it does not state that each of the attachments was "made at or near the time by, or from transmission by, a person with knowledge." (Dkt. 23 at 6). Robertson further contends that the Throckmorton Declaration is insufficient because it "does not indicate that she reviewed Robertson's personnel file, or that any of the attachments were included or found within his personnel file." *Id.* Additionally, Robertson claims that each attachment to the Throckmorton Declaration has not been properly authenticated.

"To determine if evidence in support of a motion to compel arbitration is admissible, courts apply the same standard as that applied to a motion for summary judgment." *Domain Vault LLC v. Rightside Group Ltd.*, 3:17-CV-0789-B, 2018 WL 638013, at *3 (N.D. Tex. Jan. 30, 2018) (citing *Galitski v. Samsung Telecomm Am., LLC*, No. 3:12-cv-4782-D, 2013 WL 6330645, at *1 n.5 (N.D. Tex. Dec. 5, 2013)). In a motion for summary judgment context, evidence is not required to be in a format that would be admissible at trial, but the party offering the summary judgment evidence must be able to prove the underlying facts at trial with admissible evidence. *See Celotex Corp.*

6

*v. Catrett,* 477 U.S. 317, 324–25 (1986). *See also* FED. R. CIV. P. 56(c)(2) (explaining a party may object when "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). "In reviewing evidence favorable to the party opposing a motion for summary judg[]ment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form." *Stansfield v. O'Reilly Auto., Inc.*, No. H-04-4161, 2006 WL 1030010, at *1 (S.D. Tex. April 19, 2006).

Keeping in mind this lenient standard, the Court finds that the Throckmorton Declaration—and the attached exhibits—should be considered in determining whether there is a valid and enforceable arbitration agreement. This does not mean that the Throckmorton Declaration is automatically considered the gospel in all respects. However, to give a full, fair and thoughtful review of the relevant issues, it is necessary for the Court to evaluate both the Throckmorton Declaration submitted in support of the Motion to Dismiss and the Declaration of Earl Robertson submitted in opposition to the Motion to Dismiss. It is important to note that while Robertson attacks the factual accuracy of much of what is contained in the Throckmorton Declaration, the declaration itself is not facially improper. Throckmorton has been Pollo Tropical's Director of Human Resources or Sr. Manager HR for the past 14 years, and maintains that she is "knowledgeable about the numerous methods used by Pollo Tropical to communicate and provide notice to applicants and employees about its MAP and Arbitration Agreement." (Dkt. 13-1 at 3). This is more than sufficient to find that Throckmorton is fully competent to testify. The open question is simply how much weight should be given to

7

her testimony. Additionally, the documents attached to the Throckmorton Declaration are likely admissible, even if not currently in admissible form. For example, Pollo Tropical could reasonably present testimony at trial authenticating and verifying the accuracy of the employee handbook (Exhibit A). Given that Robertson readily acknowledges that he actually reviewed and placed his name on the top of Exhibit B's first page (the Arbitration Agreement), and affixed his signature to Exhibits C, D and E (the Handbook Receipt, the Employee Acknowledgment, and the Offer Letter), it is hard to fathom why the Court should blindly ignore such documents at this stage of the case. As such, Robertson's request to strike the Throckmorton Declaration and its attachments is denied.

## IV. DISCUSSION

### A. IS THERE A VALID AGREEMENT TO ARBITRATE BETWEEN ROBERTSON AND POLLO TROPICAL?

The first substantive issue the Court must address is whether there is a valid agreement to arbitrate between the parties. After careful review of the record, this Court finds that the employee handbook, the signed Offer Letter, and the Arbitration Agreement all require Robertson to arbitrate the Title VII claims asserted in this lawsuit.

Under well-settled Texas law, "[a]n employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it." *In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161, 162 (Tex. 2006); *accord In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006); *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex.

2002). To prove notice, an employer must establish that he unequivocally notified the employee of the arbitration agreement. *See In re Halliburton Co.*, 80 S.W.3d at 568.

  **1.**   **The Employee Handbook:** Pollo Tropical first points to the full-page arbitration provision contained in the employee handbook and stresses that the company provided clear and unequivocal notice of the arbitration agreement when it handed the employee handbook to Robertson back in October 2014.[1] Robertson now claims that he did not receive the employee handbook. But that argument falls flat since Robertson admits he signed the Handbook Receipt, which stated: "I acknowledge receipt of a Pollo Tropical Employee Handbook; and that the policies, regulations and rules were explained to me, and it is my responsibility to read and understand everything in this handbook. I agree to abide by its provisions …." (Dkt. 13-1 at 14). By signing the Handbook Receipt, Robertson further recognized that he "fully underst[ood] the mentioned Pollo Tropical guidelines, rules and policies, and … voluntarily agree[d] to … [f]ollow them to the best of [his] abilities." *Id.* Accordingly, the employee handbook "constitutes effective notice because it unequivocally provided [Robertson] with knowledge of the arbitration agreement." *In re Dallas Peterbilt, Ltd.*, 196 S.W.3d at 163 (holding that an

---

[1] Robertson claims that any documents that he received at his "interview" in October 2014 should be disregarded "because he was not hired at that time." (Dkt. 23 at 12 n.3). This Court need not determine whether Pollo Tropical actually hired Robertson in October 2014 or, as Robertson suggests, interviewed him in October 2014 and then hired him in January 2015. It simply does not matter for the purposes of the arbitration analysis. Even if Robertson is correct that his employment did not begin until January 2015, there is no explanation as to why this Court should ignore the employee handbook provided to him prior to his hire date. As Pollo Tropical correctly observes: "information and terms of employment are often provided to employees to review prior to the commencement of employment because employment is often made contingent on an agreement to the information and terms provided." (Dkt. 24 at 4 n. 3).

employee who executes an acknowledgement form admitting to receipt of a summary of an arbitration agreement cannot later assert that he never received the summary in an attempt to avoid arbitration).

Having established that Robertson received notice of the arbitration agreement contained in the employee handbook, this Court must next decide whether Robertson accepted the agreement. "An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law." *Id. See also In re Dillard Dep't Stores, Inc.*, 198 S.W.3d at 780 ("If the employee receives notice and continues working with knowledge of the modified employment terms, the employee accepts them as a matter of law."). It is uncontroverted that Robertson was an at-will employee. The signed Handbook Receipt reflects that acceptance of employment results in the application of mandatory arbitration. Accordingly, the Court finds "that by signing the [Handbook Receipt] and commencing his employment, [Robertson] accepted the agreement as a matter of law." *In re Dallas Peterbilt, Ltd.*, 196 S.W.3d at 163.

**2.     The Offer Letter:** Even if this Court ignores the arbitration provision found in the employee handbook, the unambiguous Offer Letter provides an independent reason to compel arbitration in this case. The Offer Letter's arbitration section contains two sentences, with the first sentence specifying that "[a]ll employees agree to participate in our Mandatory Arbitration Program (MAP) as a condition of employment." (Dkt. 13-1 at 20). This language is clear and unequivocal, and Robertson put his John Hancock (that

is, his signature) on the document, expressly acknowledging that he "accept[ed] Pollo Tropical's offer of employment." *Id.*

Robertson seeks to avoid arbitration by focusing on the second sentence of the Offer Letter's arbitration section: "All employees must sign the MAP agreement before commencement of employment with Pollo Tropical." *Id.* According to Robertson, this language anticipates that Pollo Tropical would provide a separate document for Robertson "to review and determine if he agreed to participate in [Pollo Tropical's] Mandatory Arbitration Program (MAP)." (Dkt. 23 at 12). Because he never signed the MAP agreement before he started employment with the company, Robertson contends that he never agreed to arbitrate any employment disputes with Pollo Tropical. In essence, Robertson's contention is that signing a separate arbitration agreement is a condition precedent to the enforcement of the arbitration provision in the Offer Letter.

The Court disagrees with Robertson. Standard canons of contract construction dictate that in construing a contract, courts "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citation omitted). The first sentence of the Offer Letter unmistakably states that, as a condition of employment, Robertson agrees to participate in mandatory arbitration. That sentence cannot be ignored. To harmonize and give effect to all sentences in the mandatory arbitration section, the second sentence must be read as placing an independent obligation on Robertson to sign the MAP agreement prior to commencement of employment. Any other interpretation leads to a nonsensical result.

11

Indeed, if the Court adopts Robertson's view that there is no agreement to arbitrate unless and until he signs a standalone arbitration agreement, then the first sentence is absolutely meaningless, a result a court must avoid in interpreting a contract. *See MCI Telecomms. Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999) (stating that a court must avoid interpreting a contract in a manner that renders terms meaningless). Tellingly, there is no contractual language remotely suggesting that the underlying arbitration provision is somehow invalid or unenforceable simply because Robertson fails to sign the MAP agreement prior to starting his job. Granted, the Offer Letter's arbitration provision could have been written more precisely. Nonetheless, the Court is persuaded that the second sentence's pronouncement that "[a]ll employees must sign the MAP agreement before commenc[ing] employment" should not be considered a condition precedent to initiating arbitration. (Dkt. 13-1 at 20). Therefore, the Court finds that when Robertson signed the Offer Letter, he expressly agreed to participate in Pollo Tropical's MAP.

  **3.**  **The Arbitration Agreement:** By now, the Court has already agreed that arbitration is proper pursuant to the employee handbook's arbitration provision and the Offer Letter. But there is more. The separate Arbitration Agreement provides an additional basis for compelling arbitration.

  The Arbitration Agreement's history is a tad convoluted and disputed, to say the very least. Pollo Tropical maintains that it handed Robertson the Arbitration Agreement on his first day of work in October 2014. By contrast, Robertson steadfastly denies that he received the Arbitration Agreement in October 2014. He also claims that he did not

receive a copy of the Arbitration Agreement when he signed the Offer Letter in January 2015. For the purposes of this discussion, the Court need not make credibility determinations, nor conclude whether Robertson received the Arbitration Agreement sometime in 2014 or 2015. That is because Robertson readily concedes that he received the Arbitration Agreement sometime in 2016, during his employment and prior to his termination. As discussed above, when an employer notifies an at-will employee of an arbitration agreement and the employee continues to work after receiving notice, the at-will employee accepts the terms of the arbitration agreement as a matter of law—even if the employee does not sign the agreement.[2] *See, e.g., In re Dallas Peterbilt, Ltd.*, 196 S.W.3d at 163; *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d at 780; *In re Halliburton*, 80 S.W.3d at 568-69. The Arbitration Agreement amounts to a slight modification of Robertson's terms of employment and Robertson is bound by the modification contained in the Arbitration Agreement because he received notice of it and continued to work at Pollo Tropical after receipt of the agreement.

Robertson argues that because the Arbitration Agreement had a place for the employee to sign below the words "Agreed and Understood," his signature on the

---

[2] Although there is no question that Robertson's signature on the Arbitration Agreement would be conclusive, "the absence of a party's signature does not necessarily destroy an otherwise valid contract and is not dispositive of the question of whether the parties intended to be bound by the terms of a contract." *Wright v. Hernandez*, 469 S.W.3d 744, 757 (Tex. App.—El Paso 2015, no pet.) (citation omitted). Moreover, the Texas Supreme Court has repeatedly held that "neither the FAA nor Texas law requires that arbitration clauses be signed, so long as they are written and agreed to by the parties." *In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) (alteration and citation omitted). *See also In re Macy's Tex., Inc.*, 291 S.W.3d 418, 419 (Tex. 2009) (noting that "[t]he [Federal Arbitration Act] contains no requirements for the form or specificity of arbitration agreements except that they be in writing; it does not even require that they be signed").

Arbitration Agreement was a condition precedent to enforcing mandatory arbitration. Since he never signed the Arbitration Agreement, Robertson claims the Arbitration Agreement is, therefore, unenforceable. The Court is not persuaded. "[T]he presence of a signature block in a contract, standing alone is insufficient to establish that a party's signature is a condition precedent to the enforceability of a contract …." *Wright*, 469 S.W.3d at 760. "[T]o make a signature a condition precedent to enforcement of a contract—including an arbitration agreement—the agreement must clearly and explicitly require a signature before it becomes binding." *Firstlight Federal Credit Union v. Loya*, 478 S.W.3d 157, 170 (Tex. App.—El Paso 2015, no pet.). *See also Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 454–55 (5th Cir. 2013) (a blank signature line is not necessarily proof in and of itself that the parties required formal signatures for a contract to be binding). Here, the Arbitration Agreement does not clearly and explicitly require Robertson's signature before it can be enforced. Importantly, there is no evidence in the record from which it can reasonably be concluded that Robertson's signature was a condition precedent to the enforceability of the agreement to arbitrate.[3] Accordingly, Robertson became bound by the Arbitration Agreement by continuing employment after receiving the document in the course of his employment.

---

[3] Robertson also claims that his signature was required because the Arbitration Agreement states: "By signing below, you acknowledge that you are agreeing to have Claims, as described above, finally decided in private arbitration and not in court." (Dkt. 13-1 at 12). For the same reasons a blank signature line is not necessarily a condition precedent to the enforceability of a contract, the Court does not find that this sentence requires a signature to make the Arbitration Agreement enforceable.

**B.    DO ROBERTSON'S CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION CLAUSE?**

In order to force arbitration, Pollo Tropical must show not only that a valid arbitration agreement exists, but also that the claims raised by Robertson fall within the scope of the agreement. *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). There is a "strong presumption in favor of arbitration" once the Court concludes that there is a valid, enforceable arbitration agreement. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (citations omitted). In the Plaintiff's Original Complaint, Robertson brings Title VII discrimination and retaliation claims against Pollo Tropical arising out of his employment relationship with the company. As described above, the arbitration clause at issue is quite broad and specifically covers Title VII claims. (Dkt. 13-1 at 9 and 11) (arbitration is required for "disputes, claims, or controversies relating or referring in any manner, directly or indirectly, to: Title VII of the Civil Rights Act of 1964 ..."). As a result, Robertson's claims for affirmative relief clearly fall within the broad employment arbitration clause at issue here.

**C.    ARE THERE ANY LEGAL CONSTRAINTS, EXTERNAL TO THE PARTIES' AGREEMENT, THAT FORECLOSE ARBITRATION?**

Having determined that Robertson and Pollo Tropical entered into a valid arbitration agreement and that the arbitration clause covered Robertson's claims, the second step in the Court's arbitration analysis is to determine whether legal constraints, external to the parties' agreement, foreclose the arbitration of the claims. *See Hadnot*, 344 F.3d at 476. The party resisting arbitration must demonstrate that Congress clearly intended to preclude the parties from waiving their judicial remedies or that another

ground exists at law or equity—such as fraud or coercion—which permits the parties' contract or agreement to be revoked. *See Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 92 (2000). Robertson cannot point to any federal statute or policy which suggests that his Title VII claims should not be submitted to arbitration, an unsurprising result given that the Fifth Circuit routinely finds that Title VII claims are subject to arbitration. *See, e.g., Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 747 (5th Cir. 1996); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir. 1991). As such, binding arbitration is required to effectuate the parties' intent.

D. **MUTUALITY OF OBLIGATION**

Next, Robertson asserts that "[t]here is not a single claim covered by this arbitration clause that would be brought" by Pollo Tropical against him and, therefore, the various arbitration provisions lack mutuality. (Dkt. 23 at 16). This argument misses the mark and evidences a fundamental misunderstanding of how the Arbitration Agreement works. The Arbitration Agreement covers claims that can be brought by Robertson against Pollo Tropical, but also applies to claims that can be brought by Pollo Tropical against Robertson. Contrary to Robertson's assertion, there is no contractual language remotely suggesting that the agreement to arbitrate is a one-way obligation. To the contrary, the Arbitration Agreement provides that "P[ollo] T[ropical] and you agree that <u>any and all disputes</u>, claims or controversies for monetary or equitable relief arising out of or relating to your employment…shall be arbitrated …." (Dkt. 13-1 at 11) (emphasis added). Because the "[m]utual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement," the Arbitration Agreement

16

is supported by mutual consideration and, therefore, enforceable. *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (citation omitted). Robertson's mutuality argument is, therefore, rejected.

E. **PROCEDURAL AND SUBSTANTIVE UNCONSCIONABILITY**

Last, but definitely not least, Robertson contends that the Arbitration Agreement is invalid because it is unconscionable. "Unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *In re Halliburton Co.*, 80 S.W.3d at 571. The burden of proving unconscionability is on the party opposing arbitration. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001).

From a procedural unconscionability standpoint, Robertson argues that the Arbitration Agreement "is promoted as a 'mandatory program' with a take it or leave it attitude." (Dkt. 23 at 17). Robertson further complains that the Arbitration Agreement does not inform Robertson that he should consult legal counsel before signing the agreement. Robertson's argument has absolutely no support in Texas law. Indeed, the Texas Supreme Court specifically rejected an identical argument in *Halliburton*. There, the court held that "an employer may make precisely such a 'take it or leave it' offer to its at-will employees." *In re Halliburton Co.*, 80 S.W.3d at 572. The court reasoned that "[b]ecause an employer has a general right under Texas law to discharge an at-will employee, it cannot be unconscionable, without more, merely to premise continued employment on acceptance of new or additional employment terms." *Id.*

17

As far as substantive unconscionability is concerned, Robertson claims that the prohibitive costs of pursuing arbitration prohibit him "from effectively vindicating [his] federal statutory rights in the arbitral forum." (Dkt. 23 at 17) (citing *Green Tree*, 531 U.S. at 81). The test for substantive unconscionability is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 757. Under certain circumstances, arbitration can be so cost-prohibitive it effectively precludes a litigant from exercising his statutory right to seek redress. *Id.* at 756 (citing *Green Tree*, 531 U.S. at 91).

In this case, Robertson has failed to present specific and definitive evidence of the costs of arbitration, a necessary perquisite to prevailing on a substantive unconscionability argument. *See In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 893 (Tex. 2010). Moreover, there is no evidence indicating that Robertson is unable to pay the arbitration fees or that they are prohibitively expensive for him. And, most importantly, "[t]here is no evidence that the prospect of incurring forum fees hamper[s] or discourage[s] [Robertson] in the prosecution of his claim[s]." *Williams v. Cigna Fin. Advisors Inc.*, 197 F.3d 752, 765 (5th Cir. 1999). This failure to present such evidence is fatal to Robertson's substantive unconscionability claim.

It is also worth noting that the Arbitration Agreement offers to reimburse employees like Robertson up to half of the JAMS's filing fee so long as he submits proof

of payment to Pollo Tropical in a timely manner.[4] On top of that, the current JAMS Employment Rules & Procedures, the arbitration rules applicable here, specify that "[i]f an Arbitration is based on a clause or agreement that is required as a condition of employment, the **only** fee that an employee may be required to pay is the initial JAMS Case Management Fee." JAMS EMPLOYMENT ARBITRATION RULES & PROCEDURES, https://www.jamsadr.com/rules-employment-arbitration/#thirty-one (last visited June 8, 2018) (emphasis added). That means that the overwhelming majority of costs and expenses incurred in any arbitration proceeding will be borne by Pollo Tropical, not Robertson. In short, it is truly hard to understand how an arbitration provision that requires Pollo Tropical to pay virtually all arbitration-related expenses can prevent Robertson from vindicating his rights in arbitration. *See In re Olshan Found. Repair Co., LLC*, 328 S.W.3d at 895 ("The party opposing arbitration must show the likelihood of incurring such costs in her particular case."). On this record, Robertson has failed to carry his burden to show that the agreement to arbitrate is unconscionable.

## V. CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that the Motion to Dismiss be GRANTED, and that Robertson and Pollo Tropical resolve the claims asserted in this lawsuit in accordance with the terms of the Arbitration Agreement.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written

---

[4] Because the Court has found that the Arbitration Agreement was an effective modification to Robertson's employment terms, its provision concerning the reimbursement of any JAMS filing fee presumptively will apply to Robertson's forthcoming arbitration proceeding.

objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 8th day of June, 2018.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE